**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| **JOEL JUENGER, individually, and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:24-cv-02332** |
| **v.** | ) | |
| | ) | **Judge Nancy J. Rosenstengel** |
| **DEACONESS HEALTH SYSTEM, INC., DEACONESS ILLINOIS RED BUD REGIONAL HOSPITAL, INC., and RED BUD ILLINOIS HOSPITAL COMPANY, LLC d/b/a RED BUD REGIONAL HOSPITAL,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Plaintiff States a Claim for Breach of Duty of Confidentiality ........ 7

B. Red Bud Violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") ........ 8

i. Plaintiff Sufficiently Alleged He Was Deceived by Red Bud's False Statements ........ 9

ii. Red Bud Violated the Illinois Personal Information Protection Act and Plaintiff Adequately Alleged Pecuniary Loss ........ 10

V. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ....................2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................6

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....................6

*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) ....................9

*Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077 (2007) ....................1

*De Bouse v. Bayer*, 235 Ill. 2d 544 (2009)....................9

*Flores v. Aon Corp.*, 2023 IL App (1st) 230140....................2

*Geisberger v. Willuhn*, 72 Ill. App. 3d 435 (2d Dist. 1979) ....................6, 7, 8

*Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ....................2

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) ....................6

*Kane v. Univ. of Rochester*, Case # 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)....................10, 11

*Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023)....................2

*Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024)....................2, 7, 8

*Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................2

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................2, 8

*Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................2

*Kurowski v. Rush Sys. for Health*, Case No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024)....................11

*Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U....................2

*Mann v. Vogel*, 707 F.3d 872 (7th Cir. 2013) ....................6

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022)....................11

*In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518 (N.D. Ill. 2011) ....................................10

*Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115 (2d Dist. 2006)...............................8

*Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024)..........................................................................................................................2

**Statutes**

735 ILCS 5/8-802 .........................................................................................................................7

815 ILCS § 530/5..........................................................................................................................10

Consumer Fraud Act .......................................................................................................................9

HIPAA, 42 U.S.C. § 1320.........................................................................................................7, 11

Illinois Consumer Fraud and Deceptive Business Practices Act .......................................8, 9,10,11

*Illinois Personal Information Protection Act* .............................................................................10

Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a), (a).................................................................7

**Other Authorities**

45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i)...................................................................7

Plaintiff, JOEL JUENGER, individually, and on behalf of all others similarly situated, for his Response in Opposition to the Motion to Dismiss filed by Defendants, DEACONESS HEALTH SYSTEM, INC., DEACONESS ILLINOIS RED BUD REGIONAL HOSPITAL, INC., and RED BUD ILLINOIS HOSPITAL COMPANY, LLC d/b/a RED BUD REGIONAL HOSPITAL (Dkt. No. 20), respectfully states as follows:

## I. INTRODUCTION

Defendants, Deaconess Health System, Inc., Deaconess Illinois Red Bud Regional Hospital, Inc., and Red Bud Illinois Hospital Company, LLC d/b/a Red Bud Regional Hospital (collectively, "Defendants" or "Red Bud") purposefully installed third-party trackers on their website, https://redbudregional.com/ (the "Website") including the Facebook Pixel. When patients like Plaintiff Joel Juenger ("Plaintiff" or "Juenger") and the proposed Class Members visited Red Bud's website, the trackers recorded patients' confidential health communications and private health information, and then disclosed this information in combination with identifying information (such as IP addresses or identifying cookies) to third parties, like Facebook and Google, without these patients' consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's personal, private, confidential health information to third parties.

Illinois state courts, Illinois federal courts, the Seventh Circuit, and courts across the

country all agree—claims like Plaintiff asserts here are legally valid. *See, e.g., Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's motion for judgment on the pleadings and allowing claims to proceed); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same).

Defendants present no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated her claims. Defendant failed to meet its heavy burden, and Plaintiff thus asks that this Court deny Defendant's motion to dismiss in its entirety.

## II. BACKGROUND

Defendants are healthcare providers who serve "the Southern Illinois region and its residents with inpatient and outpatient care; emergency, medical and surgical services; rehabilitation; and diagnostic imaging." Compl. ¶ 9.[1] 11. Defendants encourage patients to use their Website, https://redbudregional.com/, along with their various web-based tools and services

---

[1] *Community*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/community/ (last visited Oct. 9, 2024).

(collectively, the "Online Platforms"), to learn about RBR on its website homepage,[2] to find medical providers,[3] to find and research medical services,[4] to access a patient portal,[5] to pay bills,[6] to access medical records,[7] and more. *Id.* ¶ 11. Defendants maintain privacy policies, posted on the Online Platforms, in which they promise to maintain the confidentiality of patient private health information. Red Bud's Notice of Privacy Practices (Compl. Ex. B) states, "[t]his Notice applies to all health records that we maintain for you. We are required by law to maintain the confidentiality of your Protected Health Information (PHI), to give you this Notice describing our practices and legal duties, to follow the terms of the current Notice, and to notify you if your unsecured protected health information has been breached. This Notice describes the practices of the employees, volunteers, students-in-training and contract staff of . . . Deaconess Illinois Red Bud Inc. (d/b/a Red Bud Regional Hospital) . . ." *Id.* ¶ 85. Therein, Defendants promise that:

> We will not sell your information without your written authorization. We will not use or share your information for the purpose of marketing the services or products of non-Deaconess entities without your written authorization. Other uses and disclosures not covered by this Notice or the laws that apply to us will be made only with your written permission.

Compl. ¶ 88; Compl. Exhibit B. And, Defendants' Notice of Privacy Practices enumerates the purposes for which they may disclose health information without authorization, none of which

---

[2] *We are Open. We are Safe. We are Ready*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com (last visited Oct. 9, 2024).

[3] *Provider Database*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/provider/ (last visited Oct. 9, 2024).

[4] *Featured Services and Conditions*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/services/ (last visited Oct. 9, 2024).

[5] *Patient Portal*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/patient-portal/ (last visited Oct. 9, 2024).

[6] *Online Bill Pay*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/online-bill-pay/ (last visited Oct. 9, 2024).

[7] *Medical Records*, RED BUD REGIONAL HOSPITAL, https://redbudregional.com/medical-records/ (last visited Oct. 9, 2024).

include for marketing purposes. *Id*. ¶¶ 86-87.

Despite these promises, and unbeknownst to patients—Plaintiff and the Class Members—Defendants installed trackers, including the Meta Pixel on the Online Platforms which collected and disclosed their Private Information, including Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook" or "Meta"), and Google, LLC ("Google") and potentially others ("the Disclosure"). On information and belief, the information that Defendants' Meta Pixel, and possibly CAPI, sent to Facebook included the Private Information that Plaintiff and the Class Members submitted to Red Bud's Website and Online Platforms, including, *inter alia*: their browsing activities, including the pages they viewed and the buttons they clicked; information concerning their statuses as patients such as patient portal activities; information concerning their medical concerns such as the providers they searched for and viewed and the medical services they viewed; as well as her identifying information, such as IP addresses and identifying cookies. *Id*. ¶ 21.

Plaintiff Juenger has been a patient of Defendants since May 2023, who received healthcare services in Defendants' emergency room for a head injury and subsequent treatment related to his recovery. *Id*. ¶ 87. He used the Website and Online Platforms beginning in May 2023 and last on or around July 2023.to search for doctors for post-concussion treatment and recovery, their contact information, and their locations; to pay medical bills; and Plaintiff Juenger used Defendants' patient portal to correspond with his physicians, schedule appointments, and view his patient records. *Id*. ¶¶ 88-91. After Juenger used the Online Platforms, he received tailored advertisements in his Facebook feed and elsewhere online for Defendants' doctors and services, for various medical testing advertisements, and for vaccinations. *Id*. ¶ 92. On information and belief, through its use of the Meta Pixel and other tracking technologies, Defendants disclosed to Facebook: the

pages and content Plaintiff Juenger viewed; Juenger's seeking of medical treatment; Juenger's status as a patient; information regarding Plaintiff Juenger's patient portal activity; the specialties of the medical providers Plaintiff searched for and viewed; the names of the medical providers Juenger searched for and viewed; the search results that Juenger clicked on; the medical services Plaintiff viewed; and, Juenger's identity via his IP addresses and/or "c_user" cookie and/or Facebook ID. *Id*. ¶ 97. As a direct and proximate result of Defendants' Disclosure, Plaintiff and the Class Members have suffered myriad injuries, including: loss of privacy; unauthorized disclosure of his Private Information; unauthorized access of his Private Information by third parties; Juenger now receives targeted health-related advertisements on Facebook and elsewhere, reflecting his private medical treatment information; Plaintiff paid Red Bud for medical services and the services he paid for included reasonable privacy and data security protections for his Private Information, but Plaintiff did not receive the privacy and security protections for which he paid, due to Defendants' Disclosures; the portion of RBR's revenues and profits attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of Defendants' savings in marketing costs attributable to collecting Plaintiff Juenger's Private Information without authorization and sharing it with third parties; the portion of Red Bud's revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff Juenger as a result of collecting Juenger's Private Information without authorization and sharing it with third parties; value to Plaintiff of surrendering his choice to keep his Private Information private and allowing Red Bud to track his data; embarrassment, humiliation, frustration, and emotional distress; decreased value of Juenger's Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of his Private Information; and statutory damages. *Id*. ¶ 99.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

## IV. ARGUMENT

As follows, Defendants fail to meet their burden under Fed. R. Civ. P. 12(b)(6) to show that Plaintiff cannot prevail on his causes of action under the well-pleaded facts set forth in the Complaint, when properly taken as true. Accordingly, the Court must deny Red Bud's Motion to Dismiss.[8]

[8] To the extent necessary, given Defendants' statements (Deft. Memo. pg. 1), Plaintiff incorporates herein the arguments set forth in the Response in Opposition to the Motion to Dismiss in a similar case, *Jane Doe v. Deaconess Illinois Union County Hospital, Inc. d/b/a Deaconess Illinois Union County d/b/a Union County Hospital*, Case No. 3:24-cv-2284 ("Union County Hospital"). However, to be clear, Plaintiff Joel Juenger's instant case is brought against a palpably different legal entity than Union County Hospital.

### A. Plaintiff States a Claim for Breach of Duty of Confidentiality

Defendant attempts to argue that Illinois law does not support or recognize Plaintiff's allegations of an implied duty of confidentiality. MTD at 3. In making this argument, Defendant directs the Court to *Geisberger v. Willuhn*, 72 Ill. App. 3d 435 (2d Dist. 1979). However, Defendant's reading of this case is incorrect. *Geisberger* makes clear that disclosures which violate the statutory privilege between a patient and their healthcare provider define what is actionable under a contract theory. *Id*. Three statutes set forth Defendant's duty to maintain the confidentiality of Plaintiff's sensitive Private Information: the Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a)[9], § 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure[10], and HIPAA.[11]

As Defendant correctly explains, a plaintiff brings a cause of action under a breach of the implied duty of confidentiality theory when a healthcare provider discloses her "personal" information, *e.g.,* information relating to the patient's mental or physical condition or the physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Here, Plaintiff alleges that he received healthcare services from Defendant, Defendant agreed to keep his Private Information confidential, Defendant is bound by at least three statutes which establish the physician-patient

---

[9] (a) The right of each patient to care consistent with sound nursing and medical practices, to be informed of the name of the physician responsible for coordinating his or her care, to receive information concerning his or her condition and proposed treatment, to refuse any treatment to the extent permitted by law, and *to privacy and confidentiality of records except as otherwise provided by law*. (emphasis added).

[10] *No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character*, necessary to enable him or her professionally to serve the patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient . . . (emphasis added).

[11] 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i) provides that a covered healthcare entity "*must obtain an authorization for any use or disclosure of protected health information for marketing*." (emphasis added).

privilege, and Defendant breached the implied duty of confidentiality to Plaintiff by intentionally deploying online tracking technology on its Website which transmitted Plaintiff's Private Information to Third Parties like Facebook. Compl. ¶¶ 260, 280-286. Therefore, Plaintiff has adequately pled a breach of the implied duty of confidentiality claim under Illinois law.

Defendant cites *Kurowski* to suggest that Plaintiff's claim fails because Plaintiff has not alleged "the disclosure of any information related to the provision of treatment." MTD p. 5. However, Plaintiff's allegations are not analogous to those made in *Kurowski*. Here, Plaintiff alleges that Defendant disclosed the following: his browsing activities; the pages he viewed and the buttons he clicked; information concerning his statuses as patients such as his patient portal activities; information concerning his medical concerns such as the providers he searched for and viewed, and the medical services he viewed; as well as his identifying information, such as IP addresses and identifying cookie, and his *identity* – to Facebook and other technology companies. Compl. ¶ 94. Plaintiff further alleges that after he used the Online Platforms, he received tailored advertisements in his Facebook feed and elsewhere online for RBR doctors and services, for various medical testing advertisements, and for vaccinations. *Id.* ¶ 92. Such allegations clearly state information relating to Plaintiff's mental or physical condition and his physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Indeed, the *Kurowski* court acknowledged that allegations setting forth unauthorized disclosures of a patient's mental or physical condition, the patient's name, and violations of the statutory patient-privilege would be actionable under a breach of implied duty of confidentiality theory. *Kurowski I*, at 940-41. Therefore, Defendant failed to meet its burden on this claim, and its motion must be denied.

**B. Red Bud Violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**

Plaintiff sufficiently stated a claim for breach of the ICFA by alleging Red Bud deceptively

encouraged its patients to use its website and online platforms, representing that information communicated therein was confidential, while simultaneously breaking that confidentiality by selling patient information. Compl. ¶¶ 10, 15-16, 20-24, 26, 68-69, 74, 92-94, 81-82 (pp. 31-32), 97 (p. 34), 178 (p. 46). These claims are sufficient under Illinois law. *See Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 121 (2d Dist. 2006). Defendant's arguments otherwise ignore Illinois law and Plaintiff's allegations.

*i. Plaintiff Sufficiently Alleged He Was Deceived by Red Bud's False Statements*

Defendant relies on *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009) to argue that Plaintiff's claim must fail because he does not to allege he was deceived by Red Bud's conduct; that is, Plaintiff's complaint must be dismissed because Plaintiff does not plead he ever saw any of Defendant's Privacy Polices or that he was personally deceived by any of the deceptive statements contained in those documents. Def.'s Memo. at 6-7. This argument ignores the allegations in Plaintiff's complaint and misstates the law.

First, Red Bud misconstrues *De Bouse*. *De Bouse* does not hold that for an ICFA claim to prevail, Plaintiff must plead he "actually saw" Defendant's Privacy Policies. Def.'s Memo. at 7. Instead, *De Bouse* stands for the proposition that "in a consumer fraud action, the plaintiff must actually be deceived by a *statement or omission*. De Bouse, 235 Ill. 2d at 555 (emphasis added). Discovery is needed to determine whether and when Plaintiff saw one of the three Privacy Policy documents Defendant promulgates to its patients. However, even if Plaintiff did not see Defendant's Privacy Policies, *De Bouse* holds that Illinois recognizes indirect deception under the Consumer Fraud Act. *Id*. at 556. A material fact exists where a buyer would have acted differently knowing the information concealed. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996).

Here, contrary to Red Bud's false assertions, Plaintiff indeed pleads he was deceived by

Red Bud's conduct. Plaintiff alleges that; (1) Defendant promulgated Privacy Policies stating that would not share Private Information with third parties for marketing purposes; (2) despite the representations contained in the Privacy Policies, Defendant does indeed transfer Private Information to third parties for marketing purposes; (3) Plaintiff used Red Bud's Website at its direction and encouragement, including to pay Red Bud for its services, (4) Plaintiff relied on Red Bud's Website to communication confidential medical information; (5) when Plaintiff used Red Bud's Website, he thought he was communicating exclusively with Red Bud, and (6) had Plaintiff been aware that his Private Information would be transmitted to unauthorized third parties, he would not have done business with Red Bud and would not have provided payment or confidential medical information to Red Bud. Compl. ¶¶ 13, 84-92, 84 (p. 32), 87-98 (pp. 33-34), 177 (p. 46), 296. Such allegations are sufficient, at the pleading stage, for Plaintiff to show he was deceived by Red Bud's conduct or omissions. *See In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 526 (N.D. Ill. 2011) (finding that defendant ignoring its obligations to prevent exposure of Plaintiff's personal information constituted an unfair practice under ICFA).

*ii. Red Bud Violated the Illinois Personal Information Protection Act and Plaintiff Adequately Alleged Pecuniary Loss*

Red Bud next falsely suggests the data it intercepted and shared with Facebook was "internet browsing information" but this is plainly wrong. Def.'s Memo. at 8-9. Plaintiff alleges, *inter alia*, that Red Bud disclosed his identity, his seeking of medical treatment, his status as a patient of Red Bud, information regarding his patient portal activity, the specialties of the medical providers he searched for and viewed, the names of the medical providers he searched for and viewed, and the medical services he viewed. Compl. ¶ 97 (p. 34). Such data is clearly "personal information" as defined in 815 ILCS § 530/5 and Red Bud cannot argue in good faith that it is not.

Indeed, courts around the country have rejected attempts by healthcare providers in

analogous cases to argue healthcare data of the type transmitted by Red Bud is mere "browser data", and this Court should too. For example, in *Kane v. Univ. of Rochester*, Case # 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, *18 (W.D.N.Y. Mar. 19, 2024), the court held that the PHI the plaintiff alleged was transmitted was ***not*** "general health information that is accessible to the public at large" (emphasis added). The court ruled "because [the defendant's] website transmits data from which it is possible to identify a specific individual who is seeking treatment from a specific physician, the information does relate to the provision of healthcare to an individual…" such data was individually identifiable health information. *Kane*, 2024 U.S. Dist. LEXIS 48515 at *18-19 (emphasis added); *Kurowski v. Rush Sys. for Health*, Case No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837 at *18-19 (N.D. Ill. July 18, 2024) (same); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. Dec. 22, 2022) ("the 'general health information'. . . the Pixel captures information that connects a particular user to a particular healthcare provider…which falls within the ambit of information protected under HIPAA.")

Finally, Defendant claims Plaintiff failed to allege actual monetary damages, as the use of its website was free. Def.'s Memo at 9-10. In so arguing, Defendant ignores Plaintiff's allegations. Under ICFA, actual damages includes any economic loss, and Plaintiff has alleged suffering monetary damages and diminution of his Private Information. Comp. ¶¶ 97 (p. 35), 306 (p. 72). Plaintiff further alleged that he paid for medical services and confidentiality of information, which he did not receive. Compl. ¶ 99 (p. 35). These allegations are sufficient at the pleadings stage.

Therefore, because Plaintiff sufficiently alleges that she lost money by paying more for Defendant's services than they were worth, Defendant's motion to dismiss Plaintiff's claim should be denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss must be denied by the Court.

Dated: January 22, 2025

Respectfully submitted,

*/s/ Lynn A. Toops*
Lynn A. Toops (No. 63337-43)
Amina A. Thomas (*Pro Hac Vice* forthcoming)
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com
mschiller@cohenandmalad.com

J. Gerard Stranch, IV
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss *(Pro Hac Vice* forthcoming)
Raina Borrelli *(Pro Hac Vice* forthcoming)
Cassandra Miller (*Pro Hac Vice* forthcoming)
STRAUSS BORRELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2025, I filed the foregoing *Response In Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system

*/s/ Lynn A. Toops*
Lynn A. Toops (No. 63337-43)