**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JOEL JUENGER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEACONESS HEALTH SYSTEM, INC., DEACONESS ILLINOIS RED BUD REGIONAL HOSPITAL, INC., and RED BUD ILLINOIS HOSPITAL COMPANY, LLC d/b/a RED BUD REGIONAL HOSPITAL,<br><br>Defendant. | ) | Case No. 3:24-cv-02332<br><br>The Honorable Nancy J. Rosenstengel, Judge |

**MEMORANDUM IN SUPPORT OF RED BUD ILLINOIS HOSPITAL COMPANY'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**INTRODUCTION** ........ 1

**LAW AND ARGUMENT** ........ 2

**I. STANDARD OF REVIEW** ........ 2

**II. THE COURT SHOULD DISMISS PLAINTIFF'S ILLINOIS CLAIMS UNDER RULE 12(B)(6).** ........ 2

**A. Plaintiff Fails To Allege The Necessary Damages To State A Claim For Negligence, Negligence *Per Se*, Or Breach Of Implied Contract.** ........ 2

**B. Plaintiff Fails To Allege The Elements Necessary To State A Claim For Invasion Of Privacy Unjust Enrichment, Or Breach Of Confidentiality.** ........ 8

**C. Plaintiff Fails To State A Claim For Violation Of The Illinois Consumer Fraud Act.** ........ 11

**D. Plaintiff Fails To State A Claim Under The Illinois Eavesdropping Statute.** ........ 14

**III. PLAINTIFF ALSO FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER FEDERAL LAW** ........ 14

**A. Plaintiff's Section 2511(1) Claim Does Not Establish That RBR Committed An Interception Under The Wiretap Act. (Count IX)** ........ 15

**B. RBR Is Not An Electronic Communications Service For Purposes Of The Wiretap And Stored Communications Acts. (Counts X, XI).** ........ 16

**C. Plaintiff Cannot Neither Establish Standing Nor Allege The Elements For A Claim Under The CFAA** ........ 18

**IV. CONCLUSION** ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Akers v. Costco Wholesale Corp.*,
631 F. Supp. 3d 625 (S.D. Ill. 2022) ........ 2

*Allen v. Novant Health, Inc.*,
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ........ 17

*Am. Hosp. Ass'n v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) ........ 4, 5, 11

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ........ 8

*AtPac, Inc. v. Aptitude Sols., Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) ........ 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2, 20

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ........ 12

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
2021 WL 3173736 (S.D.N.Y. Jul. 26, 2021) ........ 18

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 15, 16

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ........ 9

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ........ 2

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 17

*Del Vecchio v. Amazon.com Inc.*,
2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ........ 19

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ........ 10

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ... 6

*Garcia v. City of Laredo, Texas*,
702 F.3d 788 (5th Cir. 2012) ... 17

*Hartley v. University of Chicago Medical Center*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ... 8

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ... 8

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ... 17, 18

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ... 17, 18

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) ... 16

*Khorloo v. John C. Heath Attorney at Law, PLLC*,
2020 WL 1530735 (N.D. Ill. Mar. 31, 2020) ... 12

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ... 12

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ... 10, 11, 12

*Kurowski v. Rush System for Health,*
(*Kurowski II*), 683 F. Supp. 3d 836 (N.D. Ill. 2023) ... 8

*Kurowski v. Rush System for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ... 5

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ... 6, 9

*Manley v. L.*,
889 F.3d 885 (7th Cir. 2018) ... 7

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ... 6

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) .................... 6, 9

*Richards v. Mitcheff*,
696 F.3d 635 (7th Cir. 2012) .................... 2

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .................... 16

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
974 F.3d 756 (6th Cir. 2020) .................... 19

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .................... 5

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012) .................... 5

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) .................... 7

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) .................... 8

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) .................... 16

*Upperline Health*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) .................... 5

*Van Buren v. United States*,
593 U.S. 374 (2021) .................... 19, 20

*Washington v. Hyatt Hotels Corp.*,
2020 WL 3058118 (N.D. Ill. June 9, 2020) .................... 12

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .................... 6

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) .................... 14

**State Cases**


*Berry v. City of Chicago,*
2020 IL 124999, 181 N.E.3d 679 ........ 3

*De Bouse v. Bayer*,
235 Ill. 2d 544 (2009) ........ 12, 13

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435, 390 N.E.2d 945 (1979) ........ 10

*In re Illinois Bell Telephone Link-Up II & Late Charge Litigation*,
2013 IL App (1st) 113349, 994 N.E.2d 553 ........ 3, 4

*Ivey v. Transunion Rental Screening Sols., Inc*.,
2021 IL App (1st) 200894, 186 N.E.3d 1076 ........ 3

*Lewis v. Lead Industries Ass'n*,
2020 IL 124107, 2020 WL 2562929........ 3

*Martis v. Grinnell Mut. Reinsurance Co*.,
388 Ill. App. 3d 1017, 905 N.E.2d 920 (2009) ........ 9

*Oliveira v. Amoco Oil Co*.,
201 Ill. 2d 134, 776 N.E.2d 151 (2002) ........ 12, 13

*Shehade v. Gerson*,
148 Ill. App. 3d 1026, 500 N.E.2d 510 (1986) ........ 2


**Federal Statutes**


18 U.S.C. § 1030........ *passim*

18 U.S.C. § 2511........ *passim*

18 U.S.C. § 2702........ 15, 17

42 U.S.C. § 262a (2002) ........ 19


**State Statutes**


720 ILCS 5/14........ 2, 14

815 ILCS 505/10........ 12

815 ILCS 530/5........ 14

815 ILCS 530/20 ........................................................................................................ 13

815 ILCS 505/1 ........................................................................................................ 2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 2

## INTRODUCTION

Across the country, plaintiffs are suing a multitude of healthcare companies—hospitals, clinics, and telehealth services—for using ubiquitous advertising technology that most companies and government entities have on their public websites. This is one of those suits. Plaintiff Joel Juenger ("Plaintiff") brought this putative class action against Red Bud Regional Hospital ("Red Bud Regional" or "RBR"), a hospital located in Red Bud, Illinois. Dkt. # 1, Compl. ¶ 9. He alleges that RBR installed common advertising technologies, such as the Facebook Meta Pixel, on its public website. *Id.* ¶¶ 10, 15. He claims that when he visited the website, the embedded technology allowed RBR to disclose information about his activities on the website to third party advertisers, which in turn allowed them to target him with advertisements. *Id.*

Plaintiff's complaint is notable for what it fails to say. It does not allege that Plaintiff's information was disclosed to the public. It does not allege that RBR disclosed any information contained within its online patient portal.[1] And it does not allege that RBR caused any *actual* harm in any respect; most importantly, because the facts alleged show that RBR never disseminated protected health information (PHI), and only disclosed information about visitors to its *public website*—without the ability to distinguish patients from non-patients. For these reasons and others, the Court should dismissed Plaintiff' Complaint under Rule 12(b)(6).

[1] Plaintiff repeatedly alleges that RBR disclosed details about "patient portal activities," and thus disclosed their "statuses as patients." Compl. ¶¶ 21, 94, 97, 110. Based on the pleadings themselves, this is facially incorrect. Plaintiff bases this claim on the assertion that RBR disclosed instances where website visitors navigated to "patient portal pages." *Id.* at pg. 30, ¶ 110. But he does not allege that this ever occurred within the *actual patient portal*. Instead, the Complaint refers solely to https://redbudregional.com/patient-portal/, a page on RBR's public website. *Id.* ¶¶ 11, 112. And although visiting a log-in page for a patient portal is not enough to identify a website visitor as a patient, it makes no difference here, because this webpage is *not* the log-in page for the patient portal. Instead, it merely provides information about the process of setting up a patient portal account, and states that the actual log-in page for the portal is https://RedBudRegional.HealthRecordHome.com/, which is never mentioned in the Complaint.

## LAW AND ARGUMENT

### I. STANDARD OF REVIEW

"A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) 'tests whether the complaint states a claim on which relief may be granted.'" *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 631 (S.D. Ill. 2022) (quoting *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)). To survive the motion, the complaint "must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (quotations omitted). "The complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### II. THE COURT SHOULD DISMISS PLAINTIFF'S ILLINOIS CLAIMS UNDER RULE 12(B)(6).

Plaintiff asserts six claims under Illinois common law: negligence, negligence *per se*, breach of implied contract, invasion of privacy by intrusion upon seclusion, unjust enrichment, and breach of an implied duty of confidentiality. Compl. ¶¶ 224-287. He also asserts two statutory claims, one under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1, *et seq*., and one under the Illinois Eavesdropping Act, 720 ILCS 5/14, *et seq.* Compl. ¶¶ 288-332. The Court should dismiss all of these claims because Plaintiff has failed to allege the necessary elements of each claim, including damages.

#### A. Plaintiff Fails To Allege The Necessary Damages To State A Claim For Negligence, Negligence *Per Se*, Or Breach Of Implied Contract.

Plaintiff's failure to allege actual damages is fatal to his negligence and contract claims. Damages "are an essential element of every negligence action." *Shehade v. Gerson*, 148 Ill. App. 3d 1026, 1031, 500 N.E.2d 510 (1986). "The wrongful or negligent act of the defendant, by itself,

gives no right of action to anyone. Until the defendant's wrongful or negligent act produces injury to the plaintiff's interest by way of loss or damage, no cause of action accrues." *Berry v. City of Chicago,* 2020 IL 124999, ¶ 35, 181 N.E.3d 679 (quoting *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 29, 2020 WL 2562929). Likewise, in a breach of contract case, a plaintiff must "establish an actual loss or measurable damages resulting from the breach in order to recover." *Ivey v. Transunion Rental Screening Sols., Inc*., 2021 IL App (1st) 200894, ¶ 39, 186 N.E.3d 1076 (quoting *In re Illinois Bell Telephone Link-Up II & Late Charge Litigation*, 2013 IL App (1st) 113349, ¶ 19, 994 N.E.2d 553).

Here, Plaintiff's alleged damages broadly fall into four different categories: (1) loss or invasion of privacy, (2) economic or contract-based damages, (3) mitigation measures, and (4) emotional distress. Compl. ¶¶ 99 (pg. 35), 230-31, 242-44, 267. None of these alleged damages are sufficient to support Plaintiff's negligence or contract claims.

i. <u>Plaintiff cannot establish that RBR damaged him by causing a loss of his privacy.</u>

Plaintiff's primary theory of damages, and the basic premise of this entire case, is that he and the putative class members suffered a loss of privacy because RBR disclosed their PHI[2] to third party advertisers. *Id.* ¶ 99. However, he has not shown—and, as a matter of law, cannot show—that the allegedly disclosed information constituted PHI.

[2] The Complaint uses the phrase "Private Information," which it defines as personally identifiable information (PII) "*and/or*" PHI. Compl. ¶ 1 (emphasis added). However, nothing in the Complaint—or in applicable law—supports the idea that RBR could have caused an actionable loss of privacy to Plaintiff by disclosing *only* his PII. On the contrary, the Complaint exclusively asserts privacy invasions based on the disclosure of PHI. *Id.* ¶¶ 2, 3 (quoting federal guidance on impermissible disclosure of "sensitive personal health information" and "personally identifiable protected health information"); *see also id.* ¶¶ 4, 6, 7, 108-176. The whole premise of the Complaint is that RBR's website "surreptitiously forc[ed] Plaintiff and Class Members to transmit intimate details about their *medical treatment* to third parties." *Id.* ¶ 13 (emphasis added).

As alleged, RBR disclosed the following information about Plaintiff and the putative class members: (1) "identifying information, such as IP addresses," and (2) browsing activities on RBR's website, such as the webpages they viewed—including webpages about providers and medical services—and the buttons they clicked. *Id.* ¶¶ 21, 94. Plaintiff, asserting that this information constitutes PHI, relies on guidance issued by the Office for Civil Rights ("OCR") at the U.S. Department of Health and Human Services. *Id.* ¶¶ 6, 114, 124. This guidance stated that when an advertising technology connects (1) an individual's IP address with (2) a visit to a public webpage that addresses specific health conditions or healthcare providers, this combination—known as the "Proscribed Combination"—constitutes PHI under HIPAA. *Id.* ¶ 124 (citing OCR, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022, updated Mar. 18, 2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-onlinetracking/index.html).

This guidance, however, was vacated in federal court last year. *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, at *7 (N.D. Tex. June 20, 2024) ("The mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information) with a visit to a webpage addressing specific health conditions or listing health care providers is not sufficient . . . to constitute IIHI [individually identifiable health information]."). Nevertheless, Plaintiff suggests that the "Proscribed Combination" might still constitute PHI if the purpose of an individual's visit to a website is "related to an individual's past, present, or future health, health care, or payment for health care"—for example, if the purpose is "to seek a second opinion on treatment options for their brain tumor." Compl. ¶ 125-26. But *Becerra* flatly rejected this argument too—namely, the OCR's attempt to "tweak[] the Proscribed Combination to require that the identifiable individual's *subjective reason* for visiting the health-related public page must be

related to his own health." *Becerra*, 2024 WL 3075865, at *7 (emphasis added). Instead, the Court held that the Proscribed Combination "*cannot become IIHI* based solely on the visitors' subjective motive for visiting the page." *Id.* at *14 (emphasis added).

As a matter of law, Plaintiff fails to allege that RBR disclosed any PHI, and therefore fails to assert any actionable privacy interest that could give rise to damages. *See also Santoro v. Tower Health*, 2024 WL 1773371, at *6 (E.D. Pa. Apr. 24, 2024), *reconsideration denied*, 2024 WL 4771398 (E.D. Pa. Nov. 13, 2024); *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *7 (N.D. Ill. July 18, 2024); *Upperline Health*, 2024 WL 4953503, at *2-3 (S.D. Ind. Sept. 24, 2024) ("Given the dearth of information specific to Plaintiff as to what was specifically disclosed to Facebook that would plausibly be in violation of HIPAA, the court must dismiss Plaintiffs' Amended Complaint.").

ii. <u>Plaintiff's other asserted damages are also inadequate as a matter of law.</u>

Plaintiff alleges three other categories of damages, all of which are inadequate as a matter of law.

First, Plaintiff claims that he incurred economic or contract-based damages, including "lost benefit of the bargain," entitlement to RBR's revenues or "savings in marketing costs," and lost economic value of his personal information. Compl. ¶ 99 (pg 35). Illinois has never recognized these theories of damages in the context of website advertising and data disclosures; they are also widely rejected in other courts. *See Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339-40 (E.D. Pa. 2012) ("Other district courts examining the issue have found that the collection and sale of this kind of information does not carry a compensable value to consumers, and cannot sustain a finding of injury without a specific showing that the plaintiff has sustained a resulting loss.") (collecting cases).

Further, the Seventh Circuit has repeatedly indicated its disapproval of Plaintiff's "lost benefit of the bargain" theory of harm. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (expressing, in dicta, skepticism about the plaintiffs' argument that "the cost of their meals is an injury because they would not have dined at P.F. Chang's had they known of its poor data security"); *Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 696 (7th Cir. 2015) (refraining "from deciding whether the overpayment for Neiman Marcus products . . . might suffice as injuries under Article III," but acknowledging that the court was "dubious" that the overpayment theory alone would have sufficed for standing); *see also Fero v. Excellus Health Plan, Inc.,* 236 F. Supp. 3d 735, 754-55 (W.D.N.Y. 2017) (compiling cases that rejected similar theory of harm).

The Complaint also offers only threadbare allegations to support these theories of damages. For example, despite alleging that RBR's alleged disclosures deprived him of the "value" of his PII, Plaintiff fails to explain how this actually damaged him. Compl. ¶ 99. For instance, he does not allege that he had planned to sell his browsing history or private medical history to third party advertisers, and that RBR's actions had impaired his ability to do so. "While . . . browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017) ("plaintiffs do not allege that PulsePoint's data collection practices actually deprived them of any opportunity to sell their own personalized information."); *Williams v. TMC Health*, 2024 WL 4364150, at *9 (D. Ariz. Sept. 30, 2024) ("the complaint is devoid of allegations indicating Plaintiffs ever intended to profit from their data or even had some other avenue of profiting from their data").

Third, Plaintiff alleges damages based on "lost time and money incurred to mitigate and remediate the effects of use of [Plaintiff's] information." Compl. ¶ 231. These allegations, which are commonly asserted in data breach cases, are facially inadequate here: "No facts are alleged that any of the Plaintiffs have actually suffered any of these damages." *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024). Further, "[n]o facts are alleged that would explain how receiving targeted advertisements from Facebook and [Defendant] would plausibly cause any of the Plaintiffs to suffer these damages." *Id.* ("This is not a case where the Plaintiffs' personal information was stolen by criminal hackers with malicious intent. The Plaintiffs received targeted advertisements because they are Facebook users and have Facebook IDs.").

Finally, Plaintiff alleges that he suffered damages in the form of emotional distress. But under Illinois law, when there are no allegations of physical harm, "emotional damages are available only if the act was extreme or outrageous and undertaken with the knowledge and intent that the action would likely result in severe emotional harm." *Manley v. L.*, 889 F.3d 885, 892 (7th Cir. 2018). Here, the allegations in the complaint simply do not meet that high bar. In particular, the Complaint does not allege that RBR ever acted with the "intent" to cause "severe emotional harm" to Plaintiff or any other website visitor. *Id.* Without such allegations, Plaintiff cannot recover damages for emotional distress under Illinois law.

Because Plaintiff does not assert any actionable damages arising from RBR's conduct, his claims for negligence, negligence *per se*, and breach of implied contract must be dismissed.

**B. Plaintiff Fails To Allege The Elements Necessary To State A Claim For Invasion Of Privacy Unjust Enrichment, Or Breach Of Confidentiality.**

Plaintiff also asserts common law claims for invasion of privacy by intrusion upon seclusion, unjust enrichment, and breach of confidence. Compl. ¶¶ 246-57, 269-287. Each should be dismissed, because Jueneger fails to allege the elements for each cause of action.

i. <u>Plaintiff's invasion of privacy claim fails because he does not allege an intrusion.</u>

Plaintiff's invasion of privacy claim fails at the threshold: the entire premise of his Complaint is an alleged *disclosure*, not an intrusion*. See, e.g.*, Compl. ¶¶ 1, 2, 6, 7, 30, 33, 39, 87, 88, 91, 99. Under Illinois law, alleging a "disclosure" is not sufficient: "a plaintiff fails to state a claim for invaded seclusion if the harm flows from the publication rather than the intrusion." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *see also Kurowski v. Rush System for Health* (*Kurowski II*), 683 F. Supp. 3d 836, 848-49 (N.D. Ill. 2023) ("The harm caused by Rush, if any, continues to be its alleged disclosure of the Kurowski's private health information."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2-3 (N.D. Ill. Nov. 8, 2023) ("Since Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion"); *Angelo v. Moriarty*, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016). Plaintiff has, accordingly, failed to state a claim for intrusion upon seclusion.

ii. <u>Plaintiff's unjust enrichment claim fails because he does not allege a "duty" or a "detriment."</u>

Plaintiff's unjust enrichment claim also fails at the threshold, because "[u]njust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a *duty* on the part of the defendant to act and the defendant

must have *failed to abide by that duty*." *Martis v. Grinnell Mut. Reinsurance Co*., 388 Ill. App. 3d 1017, 1025, 905 N.E.2d 920 (2009) (emphasis added).

Here, Plaintiff fails to identify any alleged duty that would give rise to his claim for unjust enrichment; this alone is fatal to his claim. He also cannot rely on any alleged duties he asserts in his claims for negligence, negligence *per se*, or breach of implied contract, given his failure to state those claims. *Id.* at 1025 (when underlying claim is deficient, unjust enrichment claim must be dismissed).

In addition to lacking an actionable duty, Plaintiff also lacks an actionable detriment. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (unjust enrichment "arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust."). Plaintiff alleges that he "would not have used Defendants' services, or would have paid less for those services, if [he] had known that Defendants would collect, use, and disclose [his] Private Information to third parties." Compl. ¶ 272. However, the Seventh Circuit has rejected this theory when Plaintiff does not allege that the *actual product or service* he received from Defendant was defective or dangerous. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (rejecting plaintiffs' argument that the cost of their meals was an injury since they would not have dined at the restaurant had they known of its poor data security, because the product was not defective); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (dismissing unjust enrichment claim based on allegations that department store sold products at premium prices instead of taking a portion of the proceeds for cybersecurity, because "Plaintiffs do not allege any defect in any product they purchased; they assert instead that patronizing [defendant] inflicted injury on them.").

Plaintiff does not claim that the medical services he received from RBR were in any way defective or dangerous. Moreover, he does not allege that RBR disclosed his personal information as a result of him *being a patient* and *paying for medical services*; he alleges that the disclosure arose out of his *use of a free website.* Compl. ¶¶ 12-16. Plaintiff cannot allege that he "would have paid less for those services," because he did not pay for access to RBR's website at all. *Id.* ¶ 272. His theory of detriment is completely detached from his own allegations about RBR's conduct. Because Plaintiff does not allege an actionable duty or an actionable detriment, his claim for unjust enrichment must be dismissed.

iii. <u>Plaintiff fails to allege a breach of confidentiality, because the allegedly disclosed information was not obtained while attending a patient.</u>

Plaintiff brings a claim for "breach of implied duty of confidentiality" premised on an asserted "duty of confidentiality implied in every healthcare provider and patient relationship, akin to an implied contract". Compl. ¶ 280. Plaintiff invokes this "implied contract" theory because Illinois does not recognize an independent tort claim based on an alleged breach of physician-patient confidentiality. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) ("declin[ing] the invitation" to recognize tort claim for alleged breach of physician-patient confidentiality under Illinois law), *aff'd on other grounds* 73 F.4th 502, 516 n.4 (7th Cir. 2023).

Additionally, Plaintiff cannot assert this claim because RBR did not obtain the at-issue information while attending a patient. Under Illinois law, "if such a cause of action exists" for breach of the implied duty of confidentiality, "it is co-extensive with the statutory patient-physician privilege." *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 941 (N.D. Ill. 2023) (citing *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438, 390 N.E.2d 945 (1979) ("those disclosures which violate the statutory privilege also define what is actionable under a contract theory."). Thus, the implied duty can only be breached by "the type of disclosure that would violate the statutory

physician-patient privilege," namely "information relating to the patient's mental or physical condition or the physician's diagnosis or treatment". *Id.* at 940.

Here, just as Plaintiff cannot allege that any "PHI" was disclosed, he also cannot allege that any information about a "patient" was disclosed. The information at issue did not relate to RBR patients. Instead, as alleged, it related to the activities of *visitors to a public website*. Plaintiff cannot conflate "website visitors" with "patients," because "there are many *generic reasons* why [public website visitors] may have visited such pages, entirely unrelated to the health, healthcare, or payment for healthcare of *any* particular individual (*e.g.*, they could be public-health researchers or hospital employees)." *Becerra*, 2024 WL 3075865, at *12. "In addition, even if their visits were related to some individual's healthcare needs, they could have been acting for family members, friends, or countless other third parties." *Id.* Furthermore, even if enough information was disclosed that a third party advertiser was able to *identify* individual website visitors, it would still be impossible for the advertiser to distinguish the patients from the non-patients "without knowing information that's never received—i.e., the visitor's subjective motive." *Id.* at *14.

Accordingly, Plaintiff's claim fails. *See Kurowski*, 659 F. Supp. 3d at 940 (dismissing implied confidentiality claim under Illinois law; "Kurowski fails to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients.").

**C. Plaintiff Fails To State A Claim For Violation Of The Illinois Consumer Fraud Act.**

Count VII of Plaintiff's Complaint alleges a claim under the Illinois Consumer Fraud Act. Compl. ¶¶ 289-308. Plaintiff asserts two alleged violations of the Act: that RBR engaged in "deceptive acts and practices," by concealing the fact that it disclosed website visitor's information, and that it engaged in "unfair acts or practices," by failing to adopt adequate security measures as required by the Illinois Personal Information Protection Act. *Id.* ¶¶ 294-304. Both parts of Plaintiff's claim should be dismissed.

i. Plaintiff does not allege "actual damages" as defined by the Act.

As with his negligence and breach of contract claims, Plaintiff fails wholesale to state a claim under the Act because he does not allege actual damages. "[A] private cause of action under section 10(a) requires proof of 'actual damage' (815 ILCS 505/10a(a))." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151 (2002) (citing (815 ILCS 505/10a(a)). And, more specifically, these "actual damages" must entail "actual pecuniary loss." *See Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *7 (N.D. Ill. June 9, 2020) ("[u]nder the ICFA, a plaintiff must plead actual pecuniary loss"); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019); *Khorloo v. John C. Heath Attorney at Law, PLLC*, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020).

Plaintiff has not alleged actual pecuniary loss here; his alleged harm arose from his use of a free, publicly available website. The only actual loss that Plaintiff claims to have suffered anywhere in his Complaint is for an alleged loss of privacy, which is not actionable under the statute. *See Khorloo*, 2020 WL 1530735, at *2 ("It seems unlikely that the statute allows plaintiffs to recover damages for privacy violations because the ICFA is concerned with fraudulent or unfair advertising, not with individual privacy rights."); *Kurowski*, 659 F. Supp. 3d at 941 (same).

ii. Plaintiff fails to establish either a deceptive or an unfair practice.

Plaintiff claims that RBR violated the Act firstly by engaging in "deceptive acts and practices," and secondly by engaging in "unfair acts or practices," both arising out of RBR's alleged disclosure of website activity. Neither basis is sufficient to state a claim.

To state a claim arising out of "deceptive acts and practices," the Illinois Supreme Court has repeatedly held that a plaintiff must allege that he or she has been *personally* deceived. *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009) (collecting cases; "[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission.

If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."); *Oliveira*, 201 Ill. 2d at 155 ("[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived.").

Here, the Complaint fails to allege that Plaintiff was personally deceived. The Complaint identifies three documents that allegedly contain deceptive statements or omissions: RBR's HIPAA mandated privacy notice, its statement of patient rights and responsibilities, and the terms of use on its public website. Compl. ¶ 84. However, it does *not* allege that Plaintiff ever viewed these documents, or was personally deceived by them in any way. This is fatal to his claim for deceptive practices. *See De Bouse v. Bayer*, 235 Ill. 2d 544, 550, 922 N.E.2d 309 (2009) ("A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant"); *Oliveira*, 201 Ill. 2d at 155 (affirming dismissal where "plaintiff does not allege that he saw, heard or read any of defendant's ads," and thus also "cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance").

Next, to establish a claim for an "unfair act or practice," Plaintiff asserts that RBR's alleged disclosures violated the Illinois Personal Information Act—which "provides that a violation of that statute constitutes an unlawful practice under the [Illinois Consumer Fraud Act]." Compl. ¶ 297 (citing 815 ILCS 530/20). However, Plaintiff's reliance on the Personal Information Act is misplaced; he does not allege that any "personal information," as defined by the Act, was ever disclosed. "Personal information" specifically refers to the following: (1) "an individual's first name or first initial and last name in combination with*"* at least one additional enumerated data

element; or (2) a "user name or email address, in combination with a password or security question and answer that would permit access to an online account." 815 ILCS 530/5 (Definitions). Here, as alleged, RBR did not disclose first names or initials, last names, user names, email addresses, passwords or security questions, or *any* of the enumerated data elements that can constitute "personal information" under the Personal Information Act. Thus, Plaintiff has not asserted a valid basis for any "unfair" act or practice.

### D. Plaintiff Fails To State A Claim Under The Illinois Eavesdropping Statute.

Plaintiff claims that RBR violated the Illinois Eavesdropping Statute by "intentionally record[ing] and/or acquir[ing] Plaintiff's and Class Members' private electronic communications, without the consent of Plaintiff and Class Members, using the Pixel and similar tracking technologies on their Online Platforms." Compl. ¶ 316.

Crucially, Plaintiff alleges that the "private electronic communications" at issue were communications "*with Defendants.*" *Id.* ¶ 318 (emphasis added). Because Plaintiff communicated "with Defendants," his claim is foreclosed by the statute's one-party consent rule: liability attaches only when a party "[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party*." 720 ILCS 5/14-2(a)(3) (emphasis added). In other words, "[b]ecause [Defendant] was a party to the communications, it cannot be held liable under the Wiretap Act or the Eavesdropping Statute." *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020). This claim must therefore be dismissed.

## III. PLAINTIFF ALSO FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER FEDERAL LAW.

Plaintiff brings four claims under federal law: Count IX, under section 2511(1) of the federal Wiretap Act; Count X, under section 2511(3)(a) of the same Act; Count XI, under section 2702 of the Stored Communications Act; and Count XII, under the Computer Fraud and Abuse Act ("CFAA").

Compl. ¶¶ 333-387; 18 U.S.C. § 2511(1), (3)(a); 18 U.S.C. § 2702; 18 U.S.C. § 1030. Each of these claims fails, for the following reasons.

### A. Plaintiff's Section 2511(1) Claim Does Not Establish That RBR Committed An Interception Under The Wiretap Act. (Count IX)

Plaintiff alleges that RBR violated Section 2511(1) of the Wiretap Act in three ways: by (1) "intercepting" his electronic communications, (2) "disclosing" the intercepting communications, and (3) "using" the contents of the intercepted communications. Compl. ¶¶ 373-77; 18 U.S.C. § 2511(1)(a), (c), (d).

Plaintiff cannot recover under Section 2511 under a matter of law. As with Plaintiff's claim under the Illinois Eavesdropping Act, RBR did not commit any "interception," because it was a party to the communications at issue. The Wiretap Act is not violated in such circumstances, unless the communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). That exception does not apply here.

In order for an act to be done with a "criminal or tortious purpose," the offender must "plan[] to use the recording to harm the other party to the conversation[.]" *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010). Further, "[i]ntent may not be inferred simply by demonstrating that the intentional act of recording itself constituted a tort. A simultaneous tort arising from the act of recording itself is insufficient." *Id.*

Here, Plaintiff does not allege that RBR "intercepted" Plaintiff's web browsing activity with the "primary motivation or purpose" of committing a separate tort against him. Plaintiff makes boilerplate allegations to this effect, (*see* Compl. ¶ 351), but he alleges zero facts to make it remotely plausible that RBR possessed a tortious or criminal *purpose*. He must do more than assert that RBR's supposed "interceptions" invaded Plaintiff's privacy; he must allege—but has

not (and cannot in good faith)—that RBR invaded Plaintiff's privacy *in order to proceed with some additional tortious plot*. *See, e.g.*, *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (the crime-tort exception is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023); *Rodriguez v. Google LLC,* 2021 WL 2026726, at *6 fn. 8 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortuously" and the exception "cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users . . . .") (cleaned up).

Plaintiff has not alleged that RBR intended to commit a crime or tort *independent* of the act of interception itself. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Plaintiffs' tort claims are all premised on the claim that RBR "intercepted" their communications by disclosing them to third parties. Compl. ¶¶ 226-27, 241-43, 249. In other words, all of the alleged "torts" and "harms" flow directly from the interception itself. Plaintiff cannot have it both ways: he cannot allege that the disclosures to third parties were *both* the interception *and* an independent tortious act. *Caro*, 618 F.3d at 100. If that were true, the crime-tort exception would swallow the rule.

The law thus confirms what common sense suggests: RBR did not unlawfully "wiretap" Plaintiff's communications with its own website.

**B. RBR Is Not An Electronic Communications Service For Purposes Of The Wiretap And Stored Communications Acts. (Counts X, XI).**

Plaintiff next asserts two similar claims under the Wiretap Act and Stored Communications Act. First, in Count X, Plaintiff accuses RBR of violating the following Wiretap Act provision: "a person or entity *providing an electronic communication service to the public* shall not intentionally

divulge the contents of any communication . . . while in transmission on that service." Compl. ¶ 353 (quoting 18 U.S.C. § 2511(3)(a)) (emphasis added). Second, in Count XI, Plaintiff accuses RBR of allegedly violating the following provision of the federal Stored Communications Act: "[A] person or entity *providing an electronic communication to the public* shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." *Id.* ¶ 366 (quoting 18 U.S.C. § 2702(a)(1) (emphasis added).

For both claims, Plaintiff must establish that RBR provided an electronic communication service. Plaintiff cannot meet this bar: "the provider of an electronic communication service is the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic, and not the provider of a product or service which facilitates the data transport." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 523 (N.D. Ill. 2011); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005).

Consistent with this rule, courts have interpreted electronic communication service providers to include "telephone companies, Internet or e-mail service providers, [or] bulletin board services." *Garcia v. City of Laredo, Texas*, 702 F.3d 788, 792 (5th Cir. 2012). On the other hand, courts have rejected the proposition that an online merchant is an electronic communication service solely because it can receive electronic communications from its customers. *See, e.g.*, *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) ("Mere operation of a website that allows the company to communicate with its customers does not transform Novant into a provider of electronic communication services to the public.") (internal quotations omitted); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (rejecting the

argument "that because Amazon receives e-mails from [plaintiff] it provides an electronic communication service").

RBR is a hospital. Compl. ¶ 9. The Complaint does not allege that RBR is a telephone company, internet service provider, or any "provider of the underlying service which transports the data." *In re Michaels*, 830 F. Supp. 2d at 523. Instead, as alleged, RBR provides medical services and information on its website. Compl. ¶¶ 10-12. Businesses like RBR, which offer "traditional products and services over the Internet, as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of the ECPA." *In re Jetblue*, 379 F. Supp. 2d at 307-08. Accordingly, Counts X and XI of the Complaint should both be dismissed.

### C. Plaintiff Cannot Neither Establish Standing Nor Allege The Elements For A Claim Under The CFAA.

Finally, Plaintiff's claim under the CFAA—a statute "aimed at preventing the typical consequences of hacking"—is inadequate for multiple reasons. *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *3 (S.D.N.Y. Jul. 26, 2021). Initially, Plaintiff does not have statutory standing under the CFAA's private right of action provision, which provides limited circumstances under which a civil action may be brought. *See* 18 U.S.C. § 1030(g). Plaintiff claims that two of those circumstances apply here; he is wrong on both counts.

For his first standing argument, Plaintiff attempts to assert a "Loss to 1 or more persons during any 1-year period [] aggregating at least $5,000 in value." Compl. ¶ 385 (citing 18 U.S.C. § 1030(c)(4)(A)(i)(I)). He claims that this "loss" was caused by "the secret transmission of Plaintiff's and the Class Members' Private Information." *Id.* However, this is not an actionable loss under the CFAA.

The Supreme Court has held, based on CFAA's statutory language, that "damage" and "loss" under the CFAA are limited to "technological harms" affecting computer systems and data,

such as "the corruption of files"—a limitation that "makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Van Buren v. United States*, 593 U.S. 374, 376, 391-92 (2021) (quoting *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 757 (6th Cir. 2020)); *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) ("To allege a loss under the CFAA, plaintiffs must identity impairment of or damage to the computer system that was accessed without authorization"); *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011) (no CFAA violation where Plaintiffs do not allege that visiting Defendant's website impacted "the performance of his or her computer . . . let alone any diminution from which the Court could plausibly infer the necessary damages"). Because Plaintiff has not alleged any *harm* to his computer or data, he cannot base CFAA standing on any such "loss."

For his second standing argument, Plaintiff claims that RBR's alleged disclosure of his website browsing history to third party advertisers "constitutes 'a threat to public health or safety' under 18 U.S.C. § 1030(c)(4)(A)(i)(IV)," due to the "content of Plaintiff's and Class Members' Website Communications being made available to Defendant, Facebook, and/or other third parties without adequate legal privacy protections." Compl. ¶ 386. Again, however, this is not consistent with the intended scope and application of the CFAA. The disclosure of website browsing history to third party advertisers does not threaten the *health* or *safety* of the public, and nothing the Complaint indicates otherwise. *Compare* 42 U.S.C. § 262a (2002) (requiring the Secretary of Health and Human Services to provide public notice when the release of "certain biological agents and toxins" pose "a threat to public safety").

Even disregarding Plaintiff's lack of statutory standing, the Complaint also fails to adequately allege that RBR "exceeded authorized access" to a computer, as required to state a

CFAA claim. 18 U.S.C. § 1030(a)(2). Plaintiff alleges, with no factual support whatsoever, that RBR "exceeded, and continues to exceed, authorized access to Plaintiff's and the Class Members' protected computers and obtained information thereby." Compl. ¶ 384. This "threadbare recital of the elements of a cause of action" is insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

"An individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at 396. Such facts are not alleged here. Instead, Plaintiff alleges that he initiated a voluntary communication between his web browser and RBR's website server. *See, e.g.*, Compl. ¶ 14 ("When a person visits a website with an tracker . . . the tracker transmits the event information back to the website server and to third parties, where it can be combined with other data and used for marketing.").

There are no allegations in the Complaint that this browser-server interaction amounts to the acquisition of "information located in particular areas of the computer—such as files, folders, or databases—that are off limits to [RBR]." *Van Buren*, 593 U.S. at 396. Again, the CFAA—which is "primarily a criminal statute that prohibits the intentional and knowing unauthorized accessing of computers to obtain information or anything of value or to cause damage" — has no application to this case. *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d at 1183-84.

## IV. CONCLUSION

The Court should dismiss Doe's complaint with prejudice under Rule 12(b)(6).

Dated: January 22, 2025

Respectfully submitted,

/s/ *Jousef M. Shkoukani*

*Counsel for Defendant Red Bud Illinois Hospital Company, LLC d/b/a Red Bud Regional Hospital*

Jousef M. Shkoukani
**SHOOK, HARDY & BACON L.L.P.**
111 S. Wacker Drive, Ste. 4700
Chicago, IL 60606
312-704-7700
312-558-1195 (fax)
jshkoukani@shb.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 22, 2025, the foregoing document was electronically filed with the Clerk of Court via CM/ECF, which will provide notification of such filing to all Counsel of Record.

/s/ *Jousef M. Shkoukani*
Jousef M. Shkoukani

*Counsel for Defendant Red Bud Illinois Hospital Company, LLC d/b/a Red Bud Regional Hospital*