**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| **JOEL JUENGER, individually, and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:24-cv-2332** |
| **v.** | ) | |
| | ) | **Judge Nancy J. Rosenstengel** |
| **DEACONESS HEALTH SYSTEM, INC., DEACONESS ILLINOIS RED BUD REGIONAL HOSPITAL, INC., and RED BUD ILLINOIS HOSPITAL COMPANY, LLC d/b/a RED BUD REGIONAL HOSPITAL,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………..…………………………iii-vi

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 3

III. LEGAL STANDARD ........................................................................................ 5

IV. ARGUMENT ........................................................................................ 6

A. Plaintiff Sufficiently Alleged State Law Claims ........................................................ 6

i. Plaintiff Sufficiently Alleges Damages to State Claims for Negligence, Negligence Per Se, and Breach of Implied Contract ........................................................ 6

ii. Plaintiff Sufficiently Alleges Invasion of Privacy, Unjust Enrichment, and Breach of Confidentiality ........................................................11

iii. Plaintiff Sufficiently Alleged Violation of the Illinois Consumer Fraud Act (“ICFA”) ........................................................ 15

iv. Plaintiff Sufficiently Alleged Violation of the Illinois Eavesdropping Statute. 16

B. Plaintiff Sufficiently Alleged Federal Law Claims ........................................................ 17

i. Plaintiff Sufficiently Alleged Interception ........................................................ 17

ii. Plaintiff Sufficiently Alleged Red Bud is an Electronic Communications Service ........................................................ 18

iii. Plaintiff Sufficiently Alleged Standing and the Elements of a CFAA Claim ... 19

V. CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*,
2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ........ *passim*

*ACI Payments, Inc. v. Conservice, LLC*,
2022 WL 622214 (D. Utah Mar. 3, 2022) ........ 20

*ACW Flex Pack LLC v. Wrobel*,
2023 WL 4762596 (N.D. Ill. July 26, 2023) ........ 12, 20

*Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*,
793 F. Supp. 2d 1302 (N.D. Ga. 2011) ........ 19

*Anaya v. Birck*,
2024 WL 2209345 (N.D. Ill. May 16, 2024) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ........ 16

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 16

*Coy v. Washington Cnty. Hosp. Dist.*,
372 Ill. App. 3d 1077 (2007) ........ 1

*Fidlar Techs. v. LPS Real Estate Data Sols.*,
2013 U.S. Dist. LEXIS 159929 (C.D. Ill. Nov. 8, 2013) ........ 19

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140 ........ 3, 11, 13

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435 (1979) ........ 10

*Hartley v. University Of Chicago Medical Center, et al.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ........ *passim*

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ....................5

*Kahn v. Walmart Inc.*,
107 F.4th 585 (7th Cir. 2024) ....................16

*Krupa v. TIC Int'l Corp.*,
2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ....................3, 10, 11

*Kunkel v. Walton*,
179 Ill. 2d 519 (1997) ....................1

*Kurowski et al. v. Rush*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) .................... *passim*

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................2

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................3, 12

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................2

*Lawlor v. N. Am. Corp. of Ill.*,
2012 IL 112530 (2012) ....................11

*Lozada v. Advoc. Health & Hosps. Corp.*,
2018 IL App (1st) 180320-U ....................3, 12

*Mann v. Vogel*,
707 F.3d 872 (7th Cir. 2013) ....................6

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................7

*Moonlight Mountain Recovery, Inc. v. McCoy*,
2024 WL 4027972 (D. Idaho Sept. 3, 2024) ....................20

*Motorola Mobility, Inc. v. Microsoft Corp.*,
2012 WL 13065775 (W.D. Wash. Aug. 9, 2012) ....................6

*Nick Gaige v. Exer Holding Co., LLC*
(C.D. Cal. Jan. 30, 2025) ....................9

*People v. Alexander*,
2021 IL App (2d) 180193 ....................8

*Posner v. Davis*,
76 Ill. App. 3d 638 (1979) ....................10

*Smith, et al. v. Loyola University Medical Center*,
2024 WL 3338941 (N.D. Ill. July 9, 2024).................... *passim*

*Stein, et al., v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .................... *passim*

*United States v. Broy*,
209 F. Supp. 3d 1045 (C.D. Ill. 2016), *aff'd sub nom. United States v. Kienast*,
907 F.3d 522 (7th Cir. 2018) ....................11

*United States v. Chaparro*,
956 F.3d 462 (7th Cir. 2020) ....................8

*United States v. Darby*,
190 F. Supp. 3d 520 (E.D. Va. 2016), *aff'd*, 721 Fed. Appx. 304 (4th Cir.
2018) ....................6

*United States v. Mitrovich*,
458 F. Supp. 3d 961 (N.D. Ill. 2020) ....................8

*United States v. Thompson*,
2022 WL 834026 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022
WL 1719221 (W.D. Wash. May 27, 2022)....................20

*Wolfe v. Schaefer*,
619 F.3d 782 (7th Cir. 2010) ....................1

**Statutes**

Federal Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*.
("ECPA") ....................17, 18, 19

FTC Act Section 5, 15 U.S.C. § 45....................8

Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq*.
("HIPAA") .................... *passim*

Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. Ann.
505/1 *et seq.* ....................15

Illinois Eavesdropping Statute, 720 ILCS 5/14-2....................16, 17

Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq.* ....................13

**Other Authorities**

61 Am. Jur. Proof of Facts 3d 51 (Originally published in 2001) ....................................................6

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................5

## I. INTRODUCTION

Defendants, Deaconess Health System, Inc., Deaconess Illinois Red Bud Regional Hospital, Inc. ("Deaconess"), and Red Bud Illinois Hospital Company, LLC d/b/a Red Bud Regional Hospital ("Red Bud" or "Defendant"; collectively, "Defendants") purposefully installed third-party trackers on their website (the "Website") including the Facebook Pixel. When patients like Plaintiff Joel Juenger ("Plaintiff" or "Juenger") visited Red Bud's website, the trackers recorded patients' confidential health communications and private health information, and then disclosed this information in combination with identifying information to third parties like Facebook and Google, without patients knowledge or consent.

The Seventh Circuit "recognize[s] a constitutional right to the privacy of medical [information]." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). Likewise, "Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. "The confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy." *Kunkel v. Walton*, 179 Ill. 2d 519, 537 (1997). Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiffs' personal, private, confidential health information to third parties.

Defendant Red Bud attacks Plaintiff's Complaint by arguing that there are "a multitude" of cases like this across the country. True. Defendant is, unfortunately, not alone in its misbehavior. But that doesn't excuse its own actions—after all, whether everyone speeds while driving does not

excuse that it is still a violation of the law. Contrary to Defendants' assertion, this case does **not** arise from the use of a public website. Mr. Juenger did not voluntarily enter public information on a public website. No, he communicated confidential patient information to his medical provider, under its promises of confidentiality. Plaintiff's seeking of medical treatment, status as a patient, and identity are affirmatively *not* public information disclosed on a public website. Plaintiff did *not* "voluntarily" disclose his information to third parties. He **did not consent** to a hidden wiretap on his electronic communications with his medical provider. Who would? No patient expects that their medical provider shares their private medical information with *any* third party without their consent—much less with strangers and huge social media companies. Defendant does not deny that it surreptitiously intercepted and disclosed communications with patients made via the website to unauthorized third parties. Defendant had a duty to protect such information, but only failed to do so—and does not dispute the truth of these allegations, but proudly admits them.

**In the same context as this case**, Illinois state courts, Illinois federal courts—**including no less than five separate Northern District of Illinois Courts**—the Seventh Circuit, and courts across the country all agree—claims like Plaintiffs' are legally valid. *See, e.g.*, *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's judgment on the pleadings); *Stein, et al., v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ("*Elmhurst*") (in online tracking technology case, denying defendant's motion to dismiss); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same);

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* Exhibit A-1 (cases across the country finding same).

Defendant presents no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated his claims. Defendant failed to meet its heavy burden, and Plaintiff thus asks that this Court deny Defendant's motion to dismiss in its entirety.

## II. BACKGROUND

Defendants are healthcare providers who serve "the Southern Illinois region and its residents with inpatient and outpatient care; emergency, medical and surgical services; rehabilitation; and diagnostic imaging." Compl. ¶¶ 9, 11. Defendants encourage patients to use their Website to learn about Defendants on its website homepage, to find medical providers, to find and research medical services, to access a patient portal, to pay bills, to access medical records, and more. *Id.* ¶ 11. Defendants maintain privacy policies, posted on their website, in which they promise to maintain the confidentiality of patient private health information. *Id.* ¶¶ 84-92. Within these are affirmative promises, including: "**We will not sell your information without your written authorization.** *Id.* ¶ 88.

Despite these promises, and unbeknownst to patients like Plaintiff, Defendants installed trackers, including the Meta Pixel, on their website, which collected and disclosed their private, confidential information, including Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to third parties, including Meta

("Facebook" or "Meta"), Google, and potentially others (the "Third Parties"), without patient knowledge or authorization ("the Disclosure"). The information that Defendants' trackers sent to Third Parties included the Private Information that patients like Plaintiff submitted to Defendants' Website, including: browsing activities, like pages viewed and buttons clicked; information concerning their statuses as patients such as patient portal activities; information concerning their medical concerns such as the providers they searched for and viewed and the medical services they viewed; as well as identifying information, such as IP addresses and identifying cookies. *Id.* ¶ 21.

Plaintiff Juenger has received healthcare services, including emergency services for a head injury and subsequent recovery treatment. *Id.* ¶ 87. He used the Website to search for doctors for post-concussion treatment and recovery, their contact information, and their locations; to pay medical bills; and Juenger used Defendants' patient portal to correspond with his physicians, schedule appointments, and view his patient records. *Id.* ¶¶ 88-91. After Juenger used the Online Platforms, he received tailored advertisements in his Facebook feed and elsewhere online for Defendants' doctors and services, for various medical testing advertisements, and for vaccinations. *Id.* ¶ 92. Defendants disclosed to Third Parties: the pages and content Juenger viewed; his seeking of medical treatment; his status as a patient; information regarding his patient portal activity; the specialties of the medical providers he searched for and viewed; the names of the medical providers his searched for and viewed; the search results that his clicked on; the medical services he viewed; and, Juenger's identity via his IP addresses and/or "c_user" cookie and/or Facebook ID. *Id.* ¶ 97.

As a direct and proximate result of Defendants' Disclosure, Plaintiff has suffered myriad injuries, including: loss of privacy; unauthorized disclosure of his Private Information; unauthorized access of his Private Information by third parties; Juenger now receives targeted health-related advertisements on Facebook and elsewhere, reflecting his private medical treatment

information; Plaintiff paid Defendants for medical services to include reasonable privacy and data security protections for his Private Information, but Plaintiff did not receive the privacy and security protections for which he paid, due to Defendants' Disclosures; the portion of Defendants' revenues and profits attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of Defendants' savings in marketing costs attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of Defendants' revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff Juenger as a result of collecting Juenger's Private Information without authorization and sharing it with third parties; value to Plaintiff of surrendering his choice to keep his Private Information private and allowing Defendant to track his data; embarrassment, humiliation, frustration, and emotional distress; decreased value of Juenger's Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of his Private Information; and statutory damages. *Id.* ¶ 99.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

## IV. ARGUMENT

As follows, Defendants fail to meet their burden to show that Plaintiff cannot prevail on his causes of action under the well-pleaded facts set forth in the Complaint, when properly taken as true. Accordingly, the Court must deny Red Bud's Motion to Dismiss.[1]

### A. Plaintiff Sufficiently Alleged State Law Claims

#### *i. Plaintiff Sufficiently Alleges Damages to State Claims for Negligence, Negligence Per Se, and Breach of Implied Contract*

Plaintiff alleged present injury and damages from Defendants' unlawful disclosure of his Private Information, including unauthorized access of his Private Information by third parties, improper disclosure of his Private Information, lost benefit of his bargain, and lost value of his Private Information. Compl. ¶ 99. These are concrete, recoverable damages. *See Elmhurst; Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley.*

a. <u>Loss of privacy confers standing</u>

Defendant argues that the information it disclosed is not PHI. Defendant's argument misstates or otherwise ignores Plaintiff's allegations. First, Defendant attempts to abstract Plaintiff's allegations as 'webpages viewed' and 'clicked buttons.' But in our modern computer age, this is how one interacts and communicates on a computer.[2] What one viewed and the buttons

---

[1] Deaconess previously moved to dismiss [DE 20]. Red Bud now separately moves [DE 25]. For the reasons herein and in Plaintiff's prior briefing, both motions should be dismissed.

[2] *See, e.g.*, *United States v. Darby*, 190 F. Supp. 3d 520, 530 (E.D. Va. 2016), *aff'd*, 721 Fed. Appx. 304 (4th Cir. 2018) ("The "contents" of a computer are nothing but its code."); *Motorola Mobility, Inc. v. Microsoft Corp.*, 2012 WL 13065775, at *19 (W.D. Wash. Aug. 9, 2012) ("the Microsoft Computer Dictionary, [] defines "event" as '[a]n action or occurrence, often generated by the user, to which a program might respond—for example, key presses, button clicks, or mouse movements.'"). For a more thorough analysis of a computer and "[t]he main parts of the Internet," *See* 61 Am. Jur. Proof of Facts 3d 51 (Originally published in 2001).

they clicked are akin to written and spoken words. When you click buttons and look at webpages, you're using the internet to send and receive messages, just like talking and reading. The trackers Defendants installed tracked, collected, and disclosed these communications to third parties like Facebook. Defendant directly admits: "[a]s alleged, RBR disclosed the following information about Plaintiff…identifying information, such as IP addresses [and] browsing activities on RBR's website, such as the webpages they viewed…and the buttons they clicked." [DE 25 at 4]. Abstracting Plaintiff's communications as "browsing activity" does not in any way show that they were not Private Health Information.

Defendant's other argument focuses solely on IP addresses. Firstly, this is not the only information Plaintiff alleged Defendant disclosed; Plaintiff alleged Defendant disclosed the pages and content Plaintiff viewed, his seeking of medical treatment, his status as a patient, information regarding his patient portal activity, the specialties of the medical providers he searched for and viewed, the names of the medical providers he searched for and viewed, the search results he clicked on, the medical services he viewed, and his identity via his IP address and/or "c_user" cookie and/or FacebookID. Compl. ¶ 97. Taking but one of these allegations, a person's status as a patient, for example, is protected under HIPAA. 45 C.FR. § 160.103; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("patient status is protected health information under HIPAA"). Defendant does not even reference these allegations, much less deign to actually explain how they are not PHI or PII. Rather, Defendant completely ignores these allegations, focusing solely on Plaintiff's IP address allegation, and relying entirely on *Becerra* for support. Like Defendant, *Becerra* did not address such extensive allegations.

Defendant greatly exaggerates the holding in *Becerra*. It is simple fact that IP addresses are identifying information. Under HIPAA, 'IP address' is, in fact, listed alongside "name" as an

identifier under HIPAA. 45 C.F.R. § 164.514 (b)(2)(i)(O). IP addresses are similarly considered personally identifying in Illinois and in every federal court in this country. *See, e.g., United States v. Mitrovich*, 458 F. Supp. 3d 961, 963 (N.D. Ill. 2020) (IP address is sufficiently identifying for warrant in the context of child pornography); *United States v. Chaparro*, 956 F.3d 462, 469 (7th Cir. 2020) (same); *People v. Alexander*, 2021 IL App (2d) 180193, ¶ 49 (same).

*Becerra* did not change this. That case, which is not controlling on this Court, did **not** find that an IP address isn't protected. Rather, *Becerra* **reaffirmed the Guidance in large part**, vacating only one discrete piece of it.[3] That highly political summary judgment opinion, concerning a lawsuit against the HHS, cannot support Defendant's argument. On summary judgment, *Becerra* presented a very limited question–whether HHS exceeded its rule-making authority. The answer does not affect whether a contract was breached under Illinois law, whether a tort was committed under Illinois law, whether any Illinois statutes were violated, or whether standards of care informed by HIPAA or the FTC Act were violated. Not one of Plaintiff's claims turns on interpreting the HHS Guidance.

*Becerra* was focused on the "proscribed combination," specifically an individual's IP address combined with their subjective intent. *Becerra*, 2024 WL 3075865 at *7. Plaintiff here has alleged far more than IP address combined with subjective intent, including his identity (via his IP addresses and/or "c_user" cookie and/or Facebook ID) combined with his status as a patient and other health information, like seeking of medical treatment, searches for treatment and physicians, and appointment scheduling information. Compl. ¶ 97. And that's not all. Defendants disclosed

[3] *Becerra*, 2024 WL 3075865 at *4 n. 3, *17 n. 8 (the order "is not intended to, and should not be construed as, limiting the legal operability of [the Guidance's] other guidance"; the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound").

when patients clicked to call Red Bud, when they used an online contact form, and their bill pay and patient portal activities. *Id.* ¶¶ 104-79. "[A]ny Personal Information patients entered on RBR's payment portal, including patients' account numbers and patients' date of birth, was transmitted to Google and possibly other third parties without the patients' authorization or consent." *Id.* ¶ 113. Each of these pieces of information was combined with patient identities, disclosed via IP address *and other methods*. *Id.* ¶¶ 104-79. Defendant does not engage with these allegations, which go far beyond the small piece vacated by *Becerra*.

In any event, *Becerra* does not affect Plaintiff's claims here. As another federal district court clearly explained in the **same context as this case**, "Plaintiff's claims are not premised on a violation of the HHS guidance, but rather are based on violations of various statutes and common law." *Nick Gaige v. Exer Holding Co., LLC*, at *4 (C.D. Cal. Jan. 30, 2025). "Thus, the HHS guidance being vacated does not affect the merits of Plaintiff's allegations." *Id.* Courts across the country, including federal Illinois courts, have refused to deny motions to dismiss based on *Becerra* under facts identical to those alleged here. *Kurowski IV,* at *6, ("the Court expressly declined to defer to this bulletin in deciding whether [plaintiff] had stated a claim…it has always been true that regulated entities may not impermissibly disclose personal health information to tracking technology vendors"); *Elmhurtst; Aspen Dental; Loyola; see also* Exhibit A-1. Plaintiff has alleged Red Bud disclosed his PHI. Defendant's motion must be denied.

b. Plaintiff's other alleged damages are sufficient

In addition to loss of privacy, as already discussed, Plaintiff sufficiently alleged several other categories of damages, including actual, economic damages. *See, e.g.*, Compl. ¶ 99 (pleading monetary damages, lost benefit of the bargain, lost value of Private Information and diminution in value, lost use of Private Information without compensation, lost time and money incurred to mitigate and remediate the effects of use of Private Information, and lost value to Plaintiff of

surrendering his choice to keep his Private Information private and allowing Defendant to track his data). Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain'"—a harm which Plaintiff alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E.g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."). Plaintiff further alleged decreased value of his private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiff's Private Information, and increased risk of future harm. Compl. ¶ 99; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include "loss of the economic value of purchases").[4] And Plaintiff's mitigation allegations are sufficient. *See Krupa*, at *2, n. 1 (defendant "would then have to go on to show that [plaintiff's] mitigation damages and the potential "imminent harm" of identity theft are likewise insufficient harms, which it cannot do."). Notably, two of the cases that Defendant cites, *Remijas* and *Lewert*, both recognized that time and effort spent protecting against and mitigating risks are cognizable injuries.

As the Southern District of Indiana has explained in the similar data breach context, analyzing a breach of contract claim, "[t]he measure of a bailor's damages is the amount that will compensate him or her for the actual loss proximately resulting from the bailee's negligence or willfulness.'" *Krupa*, at *4-5 (injury sufficient where "[defendant] held [plaintiff's] personal data

---

[4] Federal courts applying Illinois law recognize that just the allegations of fear, anxiety, and worry over loss of control over one's private health information are sufficient to state a claim under Illinois law, "including in the data privacy context." *See, Loyola,* at *7 (collecting cases).

subject to a shared understanding that it would remain confidential, but [defendant] negligently exposed that data"). Furthermore, "even where actual damages are unproven, nominal damages are available for breach of contract." *Id.* "And [n]ominal damages can be, and sometimes are, awarded for the loss of personal property where the plaintiff proves defendant's liability but cannot prove any basis for assessing value to the chattel in question.'" *Id; see also Loyola*, at *4, 10 (plaintiffs sufficiently pleaded harm and standing: "[t]he alleged disclosure of the plaintiffs' sensitive health information...[is] sufficient, at this early stage in litigation, for the Court to conclude that the plaintiffs' allegations sufficiently resemble the type of loss protected by the tort of public disclosure of private information such that the loss constitutes an injury-in-fact...'fairly traceable' to [defendant's] online platform...[and] both the alleged disclosure of the plaintiffs' medical information, as well as the risk of future harm from subsequent disclosures, is redressable by this Court."). Plaintiffs' claims here are likewise sufficient.

***ii. Plaintiff Sufficiently Alleges Invasion of Privacy, Unjust Enrichment, and Breach of Confidentiality***

a. Plaintiff sufficiently alleged intrusion

Defendant argues for dismissal of Plaintiff's intrusion upon seclusion claim because Plaintiff alleges disclosure, not intrusion. Not so. Plaintiff alleged he had a reasonable expectation of privacy in communicating his sensitive Private Information to Defendants—his medical provider—on its website, and Defendant utilized secret trackers to surreptitiously disclose that Private Information to unauthorized third parties without Plaintiff's consent, an act that is highly offensive to a reasonable person which caused Plaintiff embarrassment, humiliation, frustration, and emotional distress. Compl. ¶¶ 1, 99, 246-57. Courts in Illinois and across the country have found similar claims have merit. *See Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶52; *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012); *see also United States v. Broy*, 209 F. Supp. 3d

1045, 1054 (C.D. Ill. 2016), *aff'd sub nom. United States v. Kienast*, 907 F.3d 522 (7th Cir. 2018) (police using software to "gather the contents of [a] computer[]…is not akin to police merely peering through broken blinds; it is akin to the police breaking the blinds and then peering through them."); Exhibit A-7 (listing orders denying similar motions to dismiss privacy claims).[5]

b. Plaintiff sufficiently alleged unjust enrichment

Plaintiff sufficiently alleged unjust enrichment when he alleged he conferred his PHI upon Defendant under the promise it would not disclose his PHI, Defendant then disclosed his PHI anyway, and it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiff's PHI under the premise of confidentiality. Compl. ¶¶ 269-76; *see Lozada*, at ¶ 37.[6] Unjust enrichment "is [a] condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence or, alternatively, it may be based on contracts which are implied in law." *Lozada*, ¶ 35 (citations omitted). Plaintiff's claim is proper as pleaded, in combination with Plaintiff's contract and statutory claims. And of course, claims in the alternative are allowed under the federal pleading standard at this stage.

As the Northern District of Illinois recently explained, "Illinois law imposes a duty on data collectors to maintain reasonable security measures… It's not "you buy it, you break it," but it's in the same neighborhood. You collect it, you keep it safe." *Elmhurst*, at *9.; *see also Aspen Dental*, at *9 (defendant collected "nonpublic personal information and disseminated that information to unauthorized third parties…plausibly alleg[ing] a duty to prevent the disclosure"); *Loyola*, at *7

[5] Defendant's reliance on *Hartley* and *Kurowski I* is misguided. Those cases turned on the actions of third parties in intercepting communications. In this case, Plaintiff alleged *Defendants* installed trackers on their website. Compl. ¶¶ 10, 15, 26. Thus it is *Defendant's actions*, not those of third parties, that are at issue here. Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023) ("Ownership [of the server] does not matter. It makes no difference that [defendant] does not own the servers (presumably [a third party] does)." (citation omitted)).

[6] *See* Exhibit A-6 (listing orders allowing unjust enrichment claims).

(cleaned up) ("the Illinois legislature…created a duty that requires data collectors to maintain reasonable security measures under the Information Protection Act...[defendant] collected the plaintiffs' nonpublic personal information and disseminated that information to unauthorized third parties. Thus, the complaint plausibly alleges a duty to prevent the disclosure of their private health information.").

Defendant too argues that Plaintiff has not alleged detriment. As the Illinois Court of Appeals held in *Flores*, a plaintiff "state[s] a cause of action based on a theory of unjust enrichment" if they "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37. Here, Plaintiff alleged Defendant collected, used, and disclosed his Private Information for its own gain, for marketing purposes, resulting in actual damages in an amount equal to the difference in value between the purchases he made and paid for, medical services with reasonable data privacy practices and procedures, and those purchases with unreasonable data privacy practices and procedures that he received; and ultimately, loss of the value of his Private Information. Compl. ¶ 99. Clearly, Plaintiff has properly alleged suffering a detriment for purpose of his unjust enrichment claim.

Defendant points to *Lewert* and *Remijas* for support. But *Lewert* found the plaintiffs there "alleged enough to support Article III standing." *Lewert*, 819 F.3d at 970. And the allegations here go beyond those in *Lewert* and *Remijas*. As *Lewert* explained, *Remijas* found "such arguments" as "cost … is an injury…have been adopted by courts…[where]consumers claim they would not have bought it (or paid a premium for it) had they known of the defect." *Id.* at 968. That is exactly what Plaintiff here alleged: "Had Plaintiff and Class Members been aware that their Private Information would be transmitted to unauthorized third parties, they would not have entered into such

transactions and would not have provided payment or confidential medical information to Defendants." Compl. ¶ 296 And both *Lewert* and *Remijas* recognized that time and effort spent protecting against and mitigating risks are cognizable injuries. Defendant's motion must be denied.

c. Plaintiff sufficiently alleged breach of confidentiality

Defendant asserts that it did not disclose "patient" information, because its website is open to the public, and the public is who visits its website. This is circular logic, which is perhaps more easily visualized when taken out of the 'virtual' setting and set in the 'real-world.' Defendants' healthcare facilities are open to the public, and the public is who visits Defendants' healthcare facilities. But just because patients are members of the public, does not actually suggest that the information patients share within the walls of their healthcare provider are unprotected, merely *because* they are the very members of the public Defendants cater their services to. And that, of course, does not change in the virtual world. Electronic communications with your healthcare provider are just as protected as such information communicated verbally or on physical paper.

Furthermore, the Northern District of Illinois has recognized Defendants' duty in just these circumstances:

> Illinois recognizes a common-law duty of care…on data collectors to maintain reasonable security measures… It's not "you buy it, you break it," but it's in the same neighborhood. **You collect it, you keep it safe.**…The complaint alleges that [defendant] collected [p]laintiffs' sensitive medical information, and then disseminated that information to a third party without their consent. **The collection of private health data is enough to give rise to a duty of care. A health provider that has private medical information in its hands must handle with care.**

*Elmhurst*, at *8 (citations omitted, emphasis added). As already discussed, Defendants collected and disclosed a wealth of private health information, including status as a patient, seeking of medical treatment, appointment scheduling information, and information entered on Defendants' payment portal, including their account numbers and dates of birth. Compl. ¶¶ 97, 104-79. Defendant cannot seriously contend that these allegations do not amount to Private Information.

***iii. Plaintiff Sufficiently Alleged Violation of the Illinois Consumer Fraud Act ("ICFA")***

a. Plaintiff sufficiently alleged actual damages

Defendants again argue that Plaintiff has failed to plead an actual pecuniary loss. Under ICFA, actual damages includes any economic loss, and Plaintiff has alleged suffering monetary damages and diminution of his Private Information. Compl. ¶ 99. Plaintiff further alleged, as outlined in the claims above, that he paid for medical services and confidentiality of information, which he did not receive. *Id.* These allegations are sufficient at the pleadings stage. *See Michaels*, 830 F. Supp. 2d at 527 (finding lost money sufficient for ICFA claim). Accordingly, Plaintiff has extensively alleged that Defendant intentionally implemented the pixel trackers to boost its own profits. As such, Plaintiff has sufficiently alleged unfair and deceptive conduct under ICFA.[7]

b. Plaintiff sufficiently alleged Defendants' deceptive and unfair practices

Plaintiff sufficiently alleged Defendants engaged in deceptive and unfair acts by promising confidentiality and delivering disclosure. Plaintiff relied on Defendants' deceptive promises, memorialized in their Privacy Policies, to keep Private Information Private. Compl. ¶¶ 84-92.

Defendants focus their argument on whether Plaintiff was personally deceived. First, Plaintiff alleged personal deception: he "provided his Private Information to Defendants and trusted that the information would be safeguarded according to RBR's Privacy Policies and the law." Compl. ¶ 96. "Plaintiff and Class Members relied on Defendants' representations in using Defendants' Online Platform and thought they were communicating only with their trusted healthcare provider." *Id.* ¶ 294.

Anyway, even if Plaintiff did not allege personal reliance, as the Seventh Circuit has explained, the question at hand here is whether a reasonable person would have been deceived—

[7] Courts across the country have allowed claims just like Plaintiff's here to proceed. *See* Exhibit A-9 (listing orders denying similar motions to dismiss consumer protection claims)

which is a question of fact, inappropriate for resolution at motion to dismiss. *See, e.g.*, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (regarding claim brought under ICFA, even where Plaintiff did not read labels, claims survive where it is "plausible" that "defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie" because "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually" allotted to making a consumer decision); *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (all that is required is "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled"); Kahn v. Walmart Inc., 107 F.4th 585, 595 (7th Cir. 2024) (consumer understanding and behavior are "matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them"); *see also Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024) ("Whether a "reasonable" user of Google's computer software at issue in this case consented to a particular data collection practice is not to be determined by attributing to that user the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to. Instead, a determination of what a "reasonable" user would have understood must take into account the level of sophistication attributable to the general public, which uses Google's services."). Defendant's arguments fail, and its motion must be denied.

***iv. Plaintiff Sufficiently Alleged Violation of the Illinois Eavesdropping Statute***

Defendant argues that Plaintiff's Illinois Eavesdropping claim fail because Defendant was a party to the communications. Defendant entirely ignores most of the statute, focusing only on a sub-provision. Under 720 ILCS 5/14-2(a)(2) of the IES:

(a) A person commits eavesdropping when he or she knowingly and intentionally:

> …
> (2) Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private *conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation*.

720 ILCS 5/14-2 (emphasis added). Indeed, the court in *Loyola* rejected Defendant's identical argument, noting those plaintiffs:

> allege violations based on use of an eavesdropping device 'for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party.' **That [defendant] is alleged to have been a party to the intercepted communications is, thus, not fatal to the plaintiffs' claim.**

*Id*. at *25-26 (emphasis added, internal citation omitted); *see also Aspen*, at *4 (same). Defendant's argument is legally wrong, and its motion must be denied.

### B. Plaintiff Sufficiently Alleged Federal Law Claims

Here, Plaintiff sufficiently alleged his federal Wiretap and Stored Communications Act claims by alleging Defendant intentionally employed third-party source code to intercept and disclose his Protected Information to third parties without his consent. Compl. ¶¶ 333-87. Illinois district courts—**including five different Courts in the Northern District of Illinois**—have found allegations are sufficient ***in this exact context***. *See, e.g.*, *Elmhurst; Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*. So too here, Plaintiffs' ECPA claims are sufficient.

#### *i. Plaintiff Sufficiently Alleged Interception*

Defendant first argues for dismissal, contending that it was a party to the communication. Defendant immediately recognizes the flaw in its argument; Plaintiff alleges the party exception does not apply because the crime-tort exception *does* apply, because Defendant violated HIPAA. Compl. ¶¶ 1, 108-17, 241, 284, 322, 321. "Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Elmhurst*, at *5. The Northern District of Illinois, in this exact context, has illustrated why:

> consider a hypothetical about jaywalking. Imagine if the City of Chicago banned jaywalking, with one exception. Imagine if the City of Chicago allowed jaywalking if a person is by himself, unless that person jaywalks for the purpose of committing a crime or tort.
>
> Suppose that the Joker jaywalked by himself for the purpose of robbing Gotham Bank across the street. In that scenario, the "crime or tort" is not the jaywalking. The crime or tort is the bank robbery. So the carve-out to the exception would apply. And Commissioner Gordon could give the Joker a ticket for jaywalking (in addition to arresting him for robbing the bank).
>
> But imagine if the Joker jaywalked by himself for the purpose of saying hello to the Penguin across the street. Saying hello to the Penguin is not a crime or a tort. So, the carve-out to the exception would not apply. In that situation, the Joker would not violate the jaywalking ordinance – he jaywalked, but he was by himself, and he didn't jaywalk to commit a crime or tort.

*Id.* *4. **"A disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA."** *Id.* "That's enough to conclude that the crime-tort exception applies." *Id.* "That is, the crime-tort exception to the one-party consent rule applies, because a violation of HIPPA is a crime or tort." *Id; Aspen Dental*, at *9; *Loyola*, at *18; *Hartley*, at *7; *Kurowski IV*, at *21-22.

***ii. Plaintiff Sufficiently Alleged Red Bud is an Electronic Communications Service***

Defendant next asserts Plaintiff's claim fails because it is not "an electronic communication service provider. But this argument is belied by a plain reading of each statute, which imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a); 18 USC § 2702(a)(1). There is no question that Defendant "provided," *i.e.*, made available, its website to the public—in fact, Defendant repeatedly makes a point of arguing this. *See, e.g.*, Compl. ¶¶ 10-11; [DE 25 at p. 1]. Illinois federal courts that have addressed such claims in the hospital website privacy context have concluded that they have merit in this context. *See, e.g., Elmhurst; Loyola; Aspen Dental; Kurowski IV; Hartley*. And courts outside of Illinois have recently ruled against Defendants' position. For example, in *In re BetterHelp, Inc. Data Disclosure Cases*, that defendant argued, as Defendant does here, that the ECPA claim should fail

because it was not "in the business of providing electronic communications services, in the manner of ordinary email and internet service providers." 2024 U.S. Dist. LEXIS 187442, at *10 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*; *see also Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.,* 793 F. Supp. 2d 1302, 1316 (N.D. Ga. 2011) (finding defendant "likely violated the SCA by intercepting her personal email account trade-secret material" without her consent). And contrary to Defendant's argument, it is *Defendants*, not Plaintiff, who must meet the bar here; the burden is on Defendants to convince the Court that Plaintiff's claims are not plausible. Defendant has again failed to meet its burden.

***iii. Plaintiff Sufficiently Alleged Standing and the Elements of a CFAA Claim***

Defendant next argues Plaintiff failed to allege loss. But Plaintiff alleged that Defendant's secret transmission of his Private Information, which was never meant for public consumption, resulted in numerous losses which aggregate to at least $5,000 in value, including but not limited to monetary damages, loss of privacy, unauthorized disclosure of Private Information, decreased value of Private Information, lost benefit of the bargain, and increased risk of future harm resulting from further unauthorized disclosure of his information. Compl. ¶ 99. These allegations are sufficient. *Fidlar Techs. v. LPS Real Estate Data Sols.*, 2013 U.S. Dist. LEXIS 159929, at *28-29 (C.D. Ill. Nov. 8, 2013) (allegations that defendant's access in authority resulted in a decrease in plaintiff's revenue and that plaintiff suffered monetary damages in excess of $5,000, sufficient).

Defendant next cites *Van Buren* and other off point cases to argue that it did not "exceed" its "authorized access" to Plaintiffs' Private Information by disclosing it to third parties like Facebook. But Plaintiffs alleged Defendant had *no* authorized access to disclose their data. Compl. ¶ 10 ("Defendants knowingly configured and implemented into their website ... trackers ... without patients' knowledge or authorization"). This violates CFAA; for one thing, "*Van Buren's* holding

applies only to the exceeds authorized access prong and did not similarly limit the scope of the other provisions of the CFAA, including the without authorization prong." *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). Third parties like Facebook and Google had *no authorization* to access Plaintiffs' computers whatsoever and any further question is one of fact. *See, e.g.*, Compl. ¶¶ 10, 25; *United States v. Thompson*, 2022 WL 834026, at *4 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022 WL 1719221 (W.D. Wash. May 27, 2022) ("Any argument that mistake or technological process rendered defendant 'authorized' is properly resolved by the trier of fact.").[8]

Defendant does not even attempt to argue it had unfettered authorization to access Plaintiffs' computer and information—of course it did not. Defendant did not have, for example, "administrative access to [Plaintiffs'] servers and systems." *Anaya v. Birck*, 2024 WL 2209345, at *11 (N.D. Ill. May 16, 2024). This alone requires discovery to determine what data Defendant accessed and whether such access "exceeded" Defendant's authority under its contracts with Plaintiffs and the law. *See, e.g.*, *Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972, at *4 (D. Idaho Sept. 3, 2024) (under CFAA, "questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries.") Accordingly, Defendant's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss must be denied by the Court.

---

[8] Again, Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex*, 2023 WL 4762596, at *7.

Dated: March 5, 2025

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
Andrew E. Mize (*Pro Hac Vice* forthcoming)
Emily E. Schiller (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com
eschiller@sctranchlaw.com

Lynn A. Toops (ARDC No. 63337-43)
Amina A. Thomas (*Pro Hac Vice* forthcoming)
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com
mschiller@cohenandmalad.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina Borrelli *(Pro Hac Vice* forthcoming)
STRAUSS BORRELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2025, I filed the foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV